# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **AVERY DENNISON CORPORATION,** | : | **Case No. 08 CV 795** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **ALIEN TECHNOLOGY CORPORATION,** | : | <u>**MEMORANDUM & ORDER**</u> |
| **Defendant.** | : | |

Before the Court is Defendant Alien Technology Corporation's ("Alien") *Motion to Dismiss or to Transfer Venue* (Doc. 12).  In its motion, Alien requests that the Court either (1) dismiss the case for lack of personal jurisdiction, (2) dismiss the case for improper venue, or (3) transfer the case to the United States District Court for the District of North Dakota.  The Plaintiff, Avery Dennison Corporation ("Avery"), opposes all aspects of the motion, which is now ripe for adjudication.[1]  For the reasons fully articulated below, Alien's motion to dismiss or to transfer venue is **DENIED**.

## I.    BACKGROUND

This is a patent case involving radio frequency identification or "RFID."  As described by Avery, RFID "is an advanced communication technology that uses radio waves to read information stored on microchips for identification purposes."  (Doc. 16.)  RFID systems are similar to bar coding systems in that they facilitate the identification and tracking of a particular object.  There are

---

[1]  Avery filed its response in opposition to Alien's motion on July 21, 2008.  (Doc. 14.) Alien filed its reply in support of the motion on August 7, 2008.  (Docs. 23, 25.)  On August 19, 2008, the Court heard oral argument on the motion.  (Doc. 26.)  Two days later, Avery filed a supplemental brief in opposition (Doc. 27), to which Alien filed a supplemental reply on August 22, 2008 (Doc. 28).

two components to RFID systems: the RFID reader and the RFID inlay.  The reader retrieves information remotely from the inlay. The inlay is a tag attached to, or incorporated in, the object to be tracked.  It generally consists of a microchip connected to an antenna.   One of the engineering challenges in manufacturing the inlay is finding a way to attach the microchip to the antenna in a quick, effective, and inexpensive manner.  This lawsuit focuses on Avery's patented "Strap Attach Method" for connecting the microchip to the antenna.

Avery and Alien are both participants in the emerging market for the development and sales of RFID.  The parties' had a contractual relationship in 2002 to jointly develop an inexpensive method to use Alien's Fluidic Self Assembly ("FSA") process in connection with Avery's Strap Attach Method for producing RFID inlays.  According to Avery, the partnership did not produce the desired results and was terminated in 2006.  Avery alleges that, while Alien did not manufacture or market RFID prior to its relationship with Avery, it entered the RFID industry as a result of that relationship.  Avery's lawsuit alleges that Alien used Avery's patented methods to do so.

Avery brought this lawsuit against Alien alleging infringement of seven patents, specifically, U.S. Pat. Nos. 6,951,596; 7,292,148; 7,361,251; 7,368,032; 7,307,527; 7,359,823; 7,298,266.  The first four patents relate to processes for making RFID; the other three patents relate to methods of reading, testing, and communicating RFID.  In sum, Avery alleges that Alien is unlawfully selling RFID that were manufactured using Avery's Strap Attach Method.

II.  **ANALYSIS**

A.  **ISSUES**

Alien's motion raises several issues.  First, Alien contends that this Court does not have personal jurisdiction over it.  Second, Alien argues that, even if the Court has personal jurisdiction,

-2-

venue is improper in this district.  In the alternative, Alien requests that the Court transfer the case to the United States District Court for the District of North Dakota, asserting that it is a more convenient forum for resolution of the issues presented.  The Court will address each of these issues in turn, after first describing the location of the parties' various activities.

### B.  CONDUCT RELEVANT TO PERSONAL JURISDICTION AND VENUE

Both parties are Delaware corporations.  Avery's principal place of business is in Pasadena California, within the Central District of California.  Alien's principal place of business is in Morgan Hill, California, within the Northern District of California.

### 1.  Avery

Avery is an international company with offices throughout the United States and the world. Avery has key RFID facilities in Concord, Mentor, Painesville and Strongsville, Ohio, all within the Northern District of Ohio.  These Ohio facilities "house Avery's RFID marketing personnel and business development contacts, as well as a substantial portion of Avery's legal team.  They are also the repository for much potential documentary evidence related to the development of roll-to-roll technologies."  (Doc. 14 at 14.)  Avery also has RFID facilities in South Carolina, Georgia, and Irwindale, California.  The inventors of the patents at issue reside in South Carolina and Great Britain.

### 2.  Alien

Alien markets RFID tags internationally.  Most pertinent to this Order, however, are its connections to Ohio, North Dakota, and California.

Alien's principle place of business is in Morgan Hill, California, and a great deal of its employees and corporate records are located there.  Alien also tests RFID tags in Morgan Hill.  The

inventors that may act as witnesses with respect to Alien's inventorship defense reside in California and Pennsylvania. The marketing of all of Alien's products is supervised by marketing personnel in California who work with its network of distributors.

Alien's manufacturing facilities are in Fargo, North Dakota. Alien purchased the machine which employs the allegedly infringing method from Toray International, Inc., a Japanese company, and that machine is now located at Alien's facility in Fargo. Consequently, the assembly line employees who work with the machine and those employees who ship and bill for the assembled products are also located in North Dakota. The products manufactured in North Dakota are then shipped to distributors located "all over the world" (Tr. at 17) who then sell the RFID product with the oversight of the marketing personnel in California.

Alien is registered to do business in Ohio. It has an RFID educational and resources center – the "RFID Solutions Center" – in Miamisburg, Ohio, within the Southern District of Ohio. According to Alien, the RFID Solutions Center is "a resources facility that provides educational classes, professional services, and tagged unit testing in real-world environments." (Doc. 12 at 4.) Alien does not manufacture RFID tags or perform the challenged tests at the RFID Solutions Center. Alien also has development alliances with five Ohio universities, all of which are primarily located within the Southern District of Ohio. Ohio State University ("OSU") is one of the universities with whom Alien has a development alliance. OSU's main campus is located in the Southern District of Ohio, but it has two local branches within the Northern District of Ohio. Additionally, Alien's "most valued" RFID customer is the Kennedy Group, located in Willoughby, Ohio, and its "most valuable" distributor, Bluestar, has an office in Strongsville, Ohio. Both Willoughby and Strongsville, Ohio are within the Northern District of Ohio.

-4-

C.    PERSONAL JURISDICTION

In a patent case, the Court must apply the law of the Federal Circuit in analyzing personal jurisdiction. *See LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000). Under Federal Circuit law, because the parties have not conducted jurisdictional discovery, the plaintiff only bears the burden of establishing a *prima facie* case of personal jurisdiction (as opposed to meeting a preponderance of the evidence standard). *See Trintec Indus. Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005); *see also Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002).   Further, the Court will construe the pleadings and affidavits in the light most favorable to Avery.  *Id*.

In general, personal jurisdiction involves a two-pronged inquiry: first, whether the defendant is amenable to process in the forum state and, second, whether exercising personal jurisdiction over the defendant comports with the requirements of federal due process.  *Id*.  With respect to the first prong, the Federal Circuit "defer[s] to a state's highest court to interpret whether a defendant is amenable to process in the forum state."  *Id*.  This requirement may be satisfied by conduct covered by the Ohio long-arm statute, or, if Ohio recognizes the concept, by fulfilling the requirements of "general jurisdiction."[2]  *Id*.  In this case, Alien contends that prong one can not be satisfied.  First, Alien argues that this Court does not have personal jurisdiction over it because Alien is not amenable to service of process under Ohio's long-arm statute.  Further, Alien contends that Ohio law – as it

---

[2]  The fairness requirement at the heart of personal jurisdiction may be addressed in one of two ways: specific jurisdiction or general jurisdiction.  Specific jurisdiction describes a situation in which the alleged injuries at issue in the lawsuit arise from the defendant's purposeful conduct in the jurisdiction.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).  General jurisdiction describes a case in which the alleged injuries do not arise from the defendant's conduct in the jurisdiction, but the defendant's connection to that jurisdiction is sufficiently "continuous and systematic" to satisfy the requirements of due process.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).

has been interpreted by the Federal Circuit -- simply does not recognize the concept of general jurisdiction.

Avery implicitly concedes, as it must on the facts presented, that the Ohio long-arm statute does not reach Alien. Instead, Avery argues that this Court has personal jurisdiction over Alien based on the existence of general jurisdiction. Avery contends that the Federal Circuit *has* found that general jurisdiction is a valid basis for the assertion of jurisdiction under Ohio law and that Alien's presence in this district satisfies the requirements for the exercise of such jurisdiction.

Thus, the first question the Court must resolve is whether general jurisdiction is a valid legal basis upon which to premise jurisdiction over an out-of-state defendant sued in this district. As discussed below, the Court finds that the Federal Circuit has concluded that personal jurisdiction may be premised on facts supporting general jurisdiction <u>even</u> <u>where</u> Ohio's long-arm statute would not authorize the assertion of specific jurisdiction against that same defendant.

> **1.      Federal Circuit Court Precedent Holds that Ohio Law Recognizes General Jurisdiction**

The parties vigorously debate the Federal Circuit's view of Ohio law – Avery contends that the Federal Circuit both recognizes and has relied on the concept of general jurisdiction to authorize the assertion of personal jurisdiction over patent defendants, while Alien contends it has disavowed reliance on that legal theory. Alien argues that *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002), is the most recent authority on point and that it rejects reliance on general jurisdiction for cases filed in an Ohio forum. Avery argues, to the contrary, that *Delta Sys. Inc. v. Indak Mfg. Corp.*, 4 Fed. Appx. 857 (Fed. Cir. 2001) (following *LSI*, 232 F.3d at 1375), is the most recent authority on point, and clearly interprets Ohio law as permitting the exercise of personal jurisdiction based solely on general jurisdiction. Avery says *Hildebrand* is distinguishable and does

not overrule *LSI*, either expressly or by implication.

Avery is correct – *LSI* and *Delta Sys.* remain the controlling authority, and their holdings were not altered by *Hildebrand*.  The Federal Circuit in *LSI* acknowledged that the Ohio long-arm statute does not extend to the limits of due process.  The Federal Circuit went on to say, however, that the "Ohio long-arm statute does not limit personal jurisdiction in Ohio to causes of action arising from conduct it covers."  *LSI*, 232 F.3d at 1373.  In reaching this conclusion, the Federal Circuit reasoned that the Ohio long-arm statute, enacted in 1965, did not "supplant the viability of *Perkins* [*v. Benquet Consol. Min. Co.*, 158 Ohio St. 145 (Ohio 1952)]" because *Perkins* essentially applied general jurisdiction, and Ohio Supreme Court cases post-1965 followed *Perkins*.  In *LSI*, the Federal Circuit stated:

> In essence, the Ohio Supreme Court [in *Perkins*] adopted a federal due process general jurisdiction standard as a hook for prong one of the personal jurisdiction inquiry.  That is, when an out-of-state defendant conducts "continuous and systematic" business in Ohio, it is "doing business" in Ohio and is amenable to process there, even if the cause of action did not arise from activity in Ohio.

> In 1965, the Ohio legislature enacted the Ohio long-arm statute. 1965 Ohio Laws 2307.382. This statute recognizes that certain causes of action will make a defendant amenable to process in Ohio. This statute, however, fails to supplant the viability of *Perkins*. The Ohio long-arm statute does not limit personal jurisdiction in Ohio to causes of action arising from conduct it covers. Indeed, the statute provides: "When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." Ohio Rev.Code Ann. § 2307.382(C) (West 2000). As the term "solely" indicates, Ohio courts can maintain personal jurisdiction over an out-of-state defendant conducting activity not enumerated in the Ohio long-arm statute. Further, in 1976, the Ohio Supreme Court applied the Perkins doctrine without mention of the Ohio long-arm statute in *Wainscott v. St. Louis-San Francisco Railway Co.*, 47 Ohio St.2d 133, 351 N.E.2d 466 (1976).

*LSI*, 232 F.3d at 1373.

In *Delta Sys., Inc.*, the Federal Circuit relied on *LSI* in remanding a case to the undersigned

-7-

after this Court had dismissed it on grounds of a lack of personal jurisdiction under Ohio law.  In

reaching its conclusion that neither venue nor jurisdiction were proper against Indak, this Court

looked only to the provisions of Ohio's long-arm statute and did not find any alternative grounds

upon which jurisdiction could be premised.  The Federal Circuit disagreed with this Court and held

that personal jurisdiction in Ohio is still governed by *Perkins* and, therefore, may be based on a

finding of general jurisdiction even where no provision of the long-arm statute was implicated by

a defendant's conduct.  *Delta Sys., Inc.*, 4 Fed. Appx. at 860.  Judge Timothy Dyk wrote:

> While we agree with the district court that there were insufficient contacts between
> Ohio and the alleged infringement to confer personal jurisdiction over Indak under
> the Ohio long-arm statute, that statute is not the only source of jurisdiction over an
> out-of-state defendant under Ohio law. In *LSI Industries, Inc. v. Hubbell Lighting,
> Inc.*, 232 F.3d 1369 . . . (Fed.Cir.2000), this court addressed the same issue presented
> in this appeal-namely, whether Ohio courts will entertain suits unrelated to activities
> within the state so long as the defendant has sufficient contacts with Ohio to satisfy
> federal due process requirements for general jurisdiction. Relying on the Ohio
> Supreme Court's decision in *Perkins v. Benguet Consolidated Mining Co.*, 158 Ohio
> St. 145, 107 N.E.2d 203 (Ohio 1952), and its progeny, we held that "a defendant
> conducting activity that meets the federal due process threshold for general
> jurisdiction is necessarily amenable to process under Ohio's 'doing business' standard
> as described in *Perkins*," and is therefore subject to the personal jurisdiction of the
> district court. *LSI Indus.*, 232 F.3d at 1374 . . . .
>
> In short, the district court in this case may properly exercise personal jurisdiction
> over Indak if that company maintains the "continuous" and "systematic" contacts
> with Ohio sufficient to satisfy the standard for general jurisdiction set forth by the
> Supreme Court in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445,
> 447-49 . . . (1952) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.
> 408, 414-16 . . . (1984).

*Id*.

Alien argues that *Delta Sys.* and *LSI* are no longer controlling authority in light of the Federal

Circuit's more recent opinion in *Hildebrand*, 279 F.3d 1351 (Fed. Cir. 2002).  Alien argues that the

result in *Delta Sys.* would have been different if it had been decided after *Hildebrand*.  Although this

is a colorable argument, it is not a winner.  In *Hildebrand*, the Federal Circuit stated: "The Ohio long-arm statute does not grant Ohio courts jurisdiction to the limits of the due process clause of the fourteenth amendment."  279 F.3d at 1354 (citing *Goldstein v. Christiansen*, 70 Ohio St. 3d 232 (Ohio 1994)).  The Federal Circuit further noted that "*Goldstein* clarified that the General Assembly of Ohio did not intend the long-arm statute to extend to the limits of the due process clause."  *Id*. Alien argues that these statements indicate that the Federal Circuit views *Goldstein* as the controlling Ohio Supreme Court precedent on this issue, not *Perkins*.   Alien points out, moreover, that many lower Ohio court decisions have interpreted *Goldstein* as a rejection of the concept of general jurisdiction and a direction to look only to the jurisdictional authority outlined in the Ohio long-arm statute.

Avery rebuts Alien's arguments by noting that the *Hildebrand* decision (1) never mentions *LSI* or *Delta Sys.*, and certainly does not overrule either expressly; and (2) does not even mention or discuss the concept of general jurisdiction.  Both of these statements are true.  Furthermore, *Hildebrand* does not address the crux of the analysis in *LSI*, which was the finding that "Ohio courts can maintain personal jurisdiction over an out-of-state defendant *conducting activity not enumerated in the Ohio long-arm statute*."  *LSI*, 232 F.3d at 1373 (emphasis added).  In other words, in *LSI*, the Federal Circuit (1) conceded that the Ohio long-arm statute does not reach the limits of due process and, (2) found personal jurisdiction based on general jurisdiction anyway.  *Delta Sys.* reached this conclusion, moreover, after *Goldstein* had already been decided by the Ohio Supreme Court. *Hildebrand* merely reaches the same conclusion with respect to the first proposition by citing a different case (*Goldstein*).  Because the analysis in *Hildebrand* does not address general jurisdiction, this Court can not conclude that it intended to overrule either *LSI* or *Delta Sys*.

-9-

Indeed, a careful reading of *Hildebrand* reveals that the issue of general jurisdiction was never discussed because the facts simply did not warrant it. After finding that it had personal jurisdiction over the plaintiff, the Southern District of Ohio (Marbley, J.) dismissed his patent infringement cases for failure to prosecute.[3]  Upon review, the Federal Circuit found that the district court did <u>not</u> have personal jurisdiction over the plaintiff and reversed and remanded.[4]  The Federal Circuit applied a two-step analysis.  First, it found that the plaintiff's minimal contacts with Ohio did not satisfy the Ohio long-arm statute.  Next, it found that the exercise of personal jurisdiction would not comport with due process.  Accordingly, the Federal Circuit held that personal jurisdiction was lacking. While the defendant and Judge Marbley felt that the mailing of three cease and desist letters into the state of Ohio constituted either doing business or causing tortious injury in the state under Ohio's long-arm statute – a point with which the Federal Circuit disagreed – neither argued that there were sufficient other "systemic contacts" with the state to justify the assertion of general jurisdiction.  The facts simply did not support even raising the issue of general jurisdiction.

Given that *LSI*, *Delta Sys*., and *Perkins* are never mentioned in the opinion, and that the concept of general jurisdiction was never raised or discussed, it is difficult to argue that <u>this</u> Court,

---

[3]  The Court in *Hildebrand* spoke in terms of personal jurisdiction over the *plaintiff* because of procedural oddities: One of the defendants, Steck Manufacturing Company, Inc. ("Steck"), filed a declaratory judgment action in the Southern District of Ohio against Mr. Hildebrand related to a patent. 279 F.3d at 1353-54. Subsequently, Mr. Hildebrand filed a patent infringement suit against Steck in the District of Colorado, and that court granted Steck's motion to transfer the case to the Southern District of Ohio. *Id*.  Mr. Hildebrand then stopped participating in either lawsuit.  Consequently, after finding that personal jurisdiction over Mr. Hildebrand was proper in the Southern District of Ohio, Judge Marbley dismissed Mr. Hildebrand's original Colorado patent infringement action. *Id*.

[4]  Avery also argues that *Hildebrand* is inapplicable because it involved dismissal for failure to prosecute rather than personal jurisdiction.  This is a poor argument because, upon review, the Federal Circuit's decision clearly was based on its analysis of personal jurisdiction. 279 F.3d 1351.

-10-

applying Federal Circuit law, should determine that *LSI* and *Delta Sys.* were both overruled *sub silento* in *Hildebrand*.  The safer and better interpretation of *Hildebrand* is that the Federal Circuit simply did not need to address *LSI* and general jurisdiction in order to find that the plaintiff's contacts with Ohio were insufficient to support the assertion of personal jurisdiction over him.

This reading of the Federal Circuit precedent finds support, moreover, from the fact that it appears consistent with the Sixth Circuit's view of Ohio law on this issue.  *See*, *e.g.*, *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006) (stating that Ohio recognizes two routes for the assertion of jurisdiction - specific and general - but doing so in what is arguably dicta); *see also Estate of Thomson v. Toyota Motor Corp. Worldwide*, Case No. 07-3813, 2008 U.S. App. LEXIS 16386, at *5-*12, 2008 WL 2952784, at *2-*4 (6th Cir. July 30, 2008) (holding that Ohio recognizes two routes for the assertion of jurisdiction - specific and general - but doing so in an unpublished opinion); *Keybanc Capital Mkts. v. Alpine Biomed Corp.*, Case No. 1:07-CV-1227, 2008 WL 828080, at *3-*6 (N.D. Ohio March 26, 2008) (discussing numerous opinions from the Supreme Court of Ohio, the Sixth Circuit, the Federal Circuit, and the Northern and Southern Districts of Ohio and concluding that Ohio law *does* recognize general jurisdiction).

Though it is true that this Court itself has expressed skepticism about whether the Ohio Supreme Court truly has embraced the concept of general jurisdiction as an alternative to the Ohio long-arm statute for purposes of satisfying prong one of the personal jurisdiction analysis, *see Swinson v. FedEx Nat'l, Inc.*, No. 1:08cv1028, 2008 U.S. Dist. Lexis 76292, at *2-4 (N.D. Ohio Aug. 28, 2008) (O'Malley, J.) (expressing belief that Ohio law does not recognize general jurisdiction despite the Sixth Circuit's opinions to the contrary), and, other district courts have expressed similar doubts, *see Signom v. Schenck Fuels, Inc.*, Case No. C-3-07-037, 2007 U.S. Dist.

-11-

LEXIS 42941, at *3-*9, 2007 WL 1726492, at *1-*3 (S.D. Ohio June 13, 2007) (discussing opinions from the Supreme Court of Ohio, the Sixth Circuit, the Federal Circuit, and the Northern and Southern Districts of Ohio and concluding that Ohio law does *not* recognize general jurisdiction), such skepticism can not justify ignoring established <u>Circuit Court</u> precedent on the issue.  Last time this Court checked, a district court's view of the law only controls where there is no binding Circuit Court precedent to the contrary.[5]

For all these reasons, the Court finds that *LSI* governs the issue of whether Ohio law recognizes general jurisdiction.  *LSI* expressly concludes that it does.  *LSI*, 232 F.3d at 1373-75.  The personal jurisdiction analysis therefore depends on whether Alien's contacts with Ohio are sufficient to satisfy general jurisdiction.

### 2.        General Jurisdiction Analysis

As explained in *LSI*, "[g]eneral jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." 297 F.3d at 1350 (citing *Helicopteros Nacionales*, 466 U.S. at 414-16).  In *Delta Sys.*, the Federal Circuit described the applicable standard for finding general jurisdiction as follows:

> [T]he district court in this case may properly exercise personal jurisdiction over Indak if that company maintains the "continuous" and "systematic" contacts with Ohio sufficient to satisfy the standard for general jurisdiction set forth by the Supreme Court in *Perkins* . . ., 342 U.S. 437, 445, 447-49 . . . 485 (1952) and *Helicopteros Nacionales* . . ., 466 U.S. 408, 414-16 . . . (1984).

4 Fed. Appx. at 860.  *Perkins* and *Helicopteros Nacionales* established the "continuous and

---

[5]  The fact that Judge Dyk authored *Delta Sys.* and was on the panel in both *LSI* and *Hildebrand* also supports Avery's argument that the Federal Circuit could not have intended to change its interpretation of the Ohio law applicable to personal jurisdiction in *Hildebrand* without even a mention of the prior decisions, as does the fact that Judge Lourie was on the panel in both *Delta Sys*. and *Hildebrand*.  Had they meant to so drastically change their directive to district courts in Ohio, they likely would have said so expressly.

systematic" standard for exercising general jurisdiction, but, again, as explained in *LSI*:

> Neither the United States Supreme Court nor this court has outlined a specific test to follow when analyzing whether a defendant's activities within a state are "continuous and systematic."  Instead, a court must look at the facts of each case to make such a determination.

232 F.3d at 1375. In applying this flexible test, courts frequently consider the following non-exhaustive list of factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir.1996) (cited with approval in *Delta Sys.*).[6]

The key facts with respect to general jurisdiction in this case are listed on page 1 of Avery's response in opposition to the motion to dismiss or transfer (Doc. 14).

---

[6] For example, in *Perkins*, the Supreme Court found general jurisdiction based on the defendant corporation's president's activities in Ohio.

> In Perkins, the Court addressed a situation in which state courts had asserted general jurisdiction over a defendant foreign corporation. During the Japanese occupation of the Philippine Islands, the president and general manager of a Philippine mining corporation maintained an office in Ohio from which he conducted activities on behalf of the company. He kept company files and held directors' meetings in the office, carried on correspondence relating to the business, distributed salary checks drawn on two active Ohio bank accounts, engaged an Ohio bank to act as transfer agent, and supervised policies dealing with the rehabilitation of the corporation's properties in the Philippines. In short, the foreign corporation, through its president, "ha[d] been carrying on in Ohio a continuous and systematic, but limited, part of its general business," and the exercise of general jurisdiction over the Philippine corporation by an Ohio court was "reasonable and just." 342 U.S., at 438, 445 . . . .

*Helicopteros Nacionales*, 466 U.S. at 414 (summarizing the facts in *Perkins*).

-13-

- •  Alien is registered to do business in Ohio;
- •  Alien's RFID Solutions Center is in Dayton, Ohio;
- •  Alien has development contracts with five Ohio universities;
- •  Alien lists it's "most valued RFID customer" as The Kennedy Group, located in Willoughby, Ohio;
- •  Alien's "most valued RFID distributor," Bluestar, has an office in Strongsville, Ohio (Doc. 14 at 13);
- •  Avery also alleges that Alien sells millions of RFID devices made by the allegedly infringing machines in Ohio (Doc. 14 at 2).
- •  The Avery employee who communicated with Alien most in connection with the companies' development partnership in 2002-2006, Austin Short, was located in Ohio.
- •  Avery concedes that, despite sales in the Northern District of Ohio, no infringing activity occurs here because the patents at issue are method patents.
- •  Avery also concedes that Alien does not have a regular and established place of business in the Northern District of Ohio.

In the aggregate, these facts appear sufficient to satisfy general jurisdiction. Alien's presence in Ohio by virtue of the RFID Solutions Center in Miamisburg indicates that Alien's contacts with the state are entrenched and ongoing. The RFID Solutions Center gives Alien a permanent presence in the state, like the Ohio office the corporation maintained in *Perkins*. In addition, the development agreements with Ohio universities, the fact that Alien is registered to do business in Ohio,[7] and the

---

[7] Avery's first argument in support of personal jurisdiction is that Alien consented to personal jurisdiction by registering to do business in Ohio. While Avery cites *dicta* from an Ohio Appellate Court decision in support of its argument, Alien cites a Sixth Circuit case holding that appointment of a statutory agent for in-state service does not amount to consent to personal jurisdiction. *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 328 (6th Cir. 1993). Indeed, in *Pittock*, the Sixth Circuit appears to have rejected Avery's argument. The Sixth Circuit noted that Ohio Revised Code § 1703.041 requires every foreign corporation licensed to do business in Ohio to designate a statutory agent to accept service. In addition, the Sixth Circuit interpreted the applicable U.S. Supreme Court authority, *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 893 (1988) as follows:

> [T]he mere designation of an agent in compliance with the service-of-process statute does not automatically eliminate the requirement of minimum contacts to establish personal jurisdiction.

*Pittock*, 8 F.3d at 329. The Sixth Circuit found that the Ohio Supreme Court "has already rejected the proposition that service of process may be equated with personal jurisdiction." *Id*.

presence of key distributors and one of the company's biggest RFID customers in the state suggests a significant volume of business in the state.  Together, these facts support the finding that Alien's contacts in the state are both continuous and systematic.

The facts in this case are similar to the facts in *LSI*.  In *LSI*, the defendant, Hubbell Lighting, Inc., was a Connecticut corporation with its principal place of business in Virginia.  232 F.3d at 1370. The extent of its connection to Ohio was "several millions of dollars per year from sales in Ohio" and relationships with several distributors there.  Hubbell had not sold any of the allegedly infringing products in Ohio.  *Id*. at 1375.  Based on these contacts, the Federal Circuit held that Hubbell's contacts with Ohio were sufficiently "continuous and systematic" to support the assertion of general jurisdiction over it.  *Id*.

Similarly, in *Delta Sys.*, the Federal Circuit noted that the presence of substantial sales and distribution in Ohio were significant factors in the general jurisdiction analysis. 4 Fed. Appx. at 860.

> It appears that Indak has at least three contacts with Ohio that are relevant to the jurisdictional analysis.  First, the district court found, and the parties do not dispute, that **Indak regularly sells products, other than the allegedly infringing switches, to its "substantial contingent of Ohio customers" and derives millions of dollars in revenue annually from those sales.  Although we do not reach this question, that alone might be sufficient to satisfy the requirements for the exercise of general jurisdiction over Indak.**  *Cf. Quill Corp. v. North Dakota*, 504 U.S. 298, 307-308 . . . (1992); *but see Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573 (2d Cir.) . . . .  Second, Delta alleges that Mr. Spencer Null, Indak's sales representative in Ohio, is Indak's agent in that state. . . .  Third, . . . Indak's sales manager and at least one engineer employed by the company periodically . . . visit[

---

(citing *Wainscott v. St. Louis-San Francisco Rwy. Co.*, 47 Ohio St. 2d 133 (1976)). Consequently, it appears that registration to do business in Ohio is simply one fact to consider in analyzing personal jurisdiction.

Avery makes the same consent argument in its analysis of improper venue.  Alien again cites *Pittock* and argues that the little authority Avery cites for the proposition is outdated. Again, the Court agrees with Alien on this point – registration to do business in the state is merely one factor.  It is, moreover, a less relevant factor in the venue analysis, which is district-specific.

] Indak customers in Ohio. . . .

*Id.* at 860-61 (emphasis added); *see also 3M Innovative Props. Co. v. InFocus Corp.*, No. Civ. 04-0009, 2005 WL 361494, at *3 (D. Minn. Feb. 9, 2005) (quoting *Delta Sys.*); *Massachusetts Inst. of Tech. v. Micron Tech., Inc.*, 508 F. Supp. 2d 112, 121-122 (D. Mass. 2007) ("When Micron's annual sales activity is viewed in combination with Micron's other business contacts with the forum, the evidence illustrates that Micron has created a substantial connection with Massachusetts such that it should reasonably anticipate being haled into court there.").

Accordingly, the Court finds that Alien is subject to personal jurisdiction in Ohio based on the Federal Circuit's interpretation of Ohio law and the principles of general jurisdiction.[8]  Alien's motion to dismiss for lack of personal jurisdiction is **DENIED**.

**D.    VENUE**

Having found that the Court has personal jurisdiction over Alien, the Court must turn to Alien's motion to dismiss for improper venue.  Venue in patent cases is governed by 28 U.S.C. § 1400(b):

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

---

[8]  While, as noted above, the personal jurisdiction analysis technically involves a two-step process – the second addressing the requirements of due process – where jurisdiction is premised on general rather than specific jurisdiction, the two steps in the process collapse into one.  Where a defendant's contacts with a state are sufficiently "systematic and continuous" to support general jurisdiction, haling that defendant into a court in that forum necessarily is consistent with all relevant due process concerns.  This concept is demonstrated in *LSI*, in which the Federal Circuit addressed both prongs of the personal jurisdiction test in its analysis of general jurisdiction.  232 F.3d at 1373 ("In essence, the Ohio Supreme Court adopted a federal due process general jurisdiction standard as a hook for prong one of the personal jurisdiction inquiry.") The Court employs the same method here, and, therefore, does not address the due process prong of the test for personal jurisdiction independently.

"Resides" means "is subject to personal jurisdiction."  28 U.S.C. § 1391(c).

Avery does not argue that venue is appropriate based on the second ground (Doc. 14 at 10-13) – Avery concedes that Alien has not committed acts of infringement (*i.e.*, has not practiced the method of its patent) within Ohio and that Alien does not have a "regular and established place of business" in the Northern District of Ohio.  Instead, Avery argues that, if personal jurisdiction exists in Ohio, then both the Northern and Southern District of Ohio would be proper venues for this case.

### 1. Venue Depends on Personal Jurisdiction Based on Contacts Within the Northern District of Ohio

The first venue-related issue the Court must decide is whether venue is appropriate in this case because Alien is subject to personal jurisdiction in Ohio generally, or whether venue must be analyzed in terms of personal jurisdiction based on only those contacts which occurred in the Northern District of Ohio.

The venue analysis is similar to the personal jurisdiction analysis, but, despite Avery's contention otherwise, the relevant contacts *are* limited to those in the Northern District of Ohio, as opposed to the entire state.  For the reasons discussed below, § 1400(b), and the case law interpreting it, does not support Avery's broader legal position.  Instead, the applicable definition of "resides" at § 1391(c) requires the Court to treat the Northern District of Ohio as a separate state and to determine whether Alien is subject to personal jurisdiction based on Alien's contacts solely within the Northern District of Ohio.  Only if personal jurisdiction can be exercised over Alien in the Northern District of Ohio would it be a proper venue under § 1400(b). For venue purposes, accordingly, Alien's contacts within the Southern District of Ohio must be excluded from the analysis.

Section 1400(b) is the statute specific to venue in patent cases. Here, Avery argues that venue

-17-

is appropriate under § 1400(b) because Alien "resides" in the Northern District of Ohio by virtue of the fact that Alien is subject to personal jurisdiction in Ohio generally. In *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990) *cert. denied*, 499 U.S. 922 (1991), the Federal Circuit held that the general venue statute (28 U.S.C. § 1391(c)) provides the definition of "resides" for purposes of the patent venue statute (28 U.S.C. § 1400(b)). The Federal Circuit held: "Section 1391(c) clearly applies to § 1400(b), and thus redefines the meaning of the term 'resides' in that section." *VE Holding*, 917 F.2d at 1578.

> Section 1391(c) provides:
>
> "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. **In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State**, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts."

28 U.S.C. § 1391(c) (emphasis added). The second sentence of § 1391(c) specifically defines "resides" in the context of a corporate defendant subject to personal jurisdiction in a state with multiple districts.

*VE Holding* discusses the history of §§ 1400(b) and 1391(c) in detail and concludes that Congress intended the 1988 revisions to § 1391(c) to apply to § 1400(b). *VE Holding*, 917 F.2d 1574. Prior to 1988, courts treated § 1400(b) as operating independently of § 1391(c). As a result, venue in patent cases was more restricted than in other cases. *VE Holding* specifically remedied this discrepancy. In fact, the main thrust of the *VE Holding* opinion is that the patent venue statute should be read consistently with the general venue statute. *Id*. at 1583-84. Therefore, <u>both</u> of the

-18-

definitions of "reside" in § 1391(c) should be given effect.  That is, the Court should apply (1) the definition applicable to corporations subject to personal jurisdiction in a state that only contains one federal district court and (2) the definition applicable to corporations subject to personal jurisdiction in a state containing multiple districts.  Specifically, in *VE Holding* the Federal Circuit held:

> **"Thus, the first test for venue under § 1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject to personal jurisdiction <u>in the district of suit</u> at the time the action was commenced. 28 U.S.C. §§ 1391(c) & 1400(b) (1988).** Since Johnson has conceded that VE obtained personal jurisdiction over it in the Northern District of California, . . . Johnson "resides" in that district, within the meaning of the first test of § 1400(b), and venue properly lies in the Northern District of California. The District Court's determination that venue with regard to Johnson did not lie in the Northern District of California was error."

*VE Holding*, 917 F.2d at 1584 (emphasis added).

At oral argument, Avery cited *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005), for the proposition that the personal jurisdiction analysis and venue analysis are identical in all patent cases.  Avery quoted *Trintec* as follows:  "Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction. *VE Holding Corp.* . . . .  Therefore, no separate venue inquiry is necessary."  In context, however, *Trintec* does not support Avery's position.  First, *Trintec* was on appeal from the D.C. District Court and did not mention, or have reason to mention, venue in patent cases filed in a state with more than one district.  In jurisdictions – *e.g.*, Washington D.C. -- that only contain one federal district court, the statement in *Trintec* that a finding of venue is synonymous with personal jurisdiction is correct.  There is an extra step in states – *e.g.*, Ohio -- containing multiple districts, however.  Second, *Trintec* cites *VE Holding*, which expressly states that the case does not involve the second definition of "reside" in § 1391(c), *i.e.*, the definition applicable to the "residence" of corporations in a state with multiple

-19-

districts.

> In response to pressure from the bar and the courts, in 1988 Congress amended § 1391(c).  The former one sentence subsection now consists of two sentences.  **The new second sentence of subsection (c) applies when a defendant corporation is amenable to federal jurisdiction in a state having several judicial districts.  It prescribes which of them shall be the proper venue, and is not at issue in this case.**

*VE Holding*, 917 F.2d at 1578 (emphasis added). Taken together, *VE Holding* and *Trintec* do <u>not</u> support the proposition Avery advances.  Neither case states that the Court should apply the first sentence of § 1391(c) to cases governed by the second sentence concerning states with multiple districts.  Indeed, the Federal Circuit's emphasis in *VE Holdings* on bringing § 1400(b) in line with § 1391(c) strongly favors applying § 1391(c) directly and in its entirety.

Cases following *VE Holding* in states with more than one district have explained that the applicable definition of "reside" is set forth in the second sentence of § 1391(c).  Pursuant to this sentence of § 1391(c), the court determines whether the corporate defendant is subject to personal jurisdiction in the district as if it were a separate state.  For example, in *Plastic Films, Inc. v. Poly Pak Am., Inc.*, 764 F. Supp. 1238, 1239 (W.D. Mich. 1991), the court analyzed this issue as follows:

> In 1988, Congress adopted a new definition of "reside" as it applies to venue for corporate defendants.  *See* 28 U.S.C. § 1391(c). This definition is applicable to actions governed by the general venue statute and to actions, like patent infringement suits, governed by specific venue statutes. *VE Holding*, 917 F.2d at 1584. A corporate defendant is deemed to reside in any judicial district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). If a state has more than one judicial district, a corporate defendant is deemed to reside in only those districts where its contacts would be sufficient to subject it to personal jurisdiction if those districts were separate states.FN2 *Id.*; H.R.Rep. 889, 100th Cong., 2d Sess. 70, reprinted in 1988 U.S.Code Cong. & Admin.News 5982, 6031.

>> FN2. In its brief and supporting documentation, the plaintiff has based its personal jurisdiction arguments on the premise that all of the defendant's contacts with Michigan, not just those within the area comprising the Western District of Michigan, are to be considered.

-20-

> Nevertheless, since the defendant's contacts with Michigan are insufficient to support the exercise of personal jurisdiction and it necessarily follows from that conclusion that there are insufficient contacts with the territory comprising this district, the Court will consider all of the defendant's contacts with Michigan in order to expedite the resolution of this matter.

The Court in *Sanofi-Aventis v. Synthon Holding BV*, No. 1:07cv86, 2008 WL 819295, *3 (M.D.N.C. Mar. 20, 2008) similarly relied on *VE Holding* in analyzing this issue:

> As noted above, venue is proper in any district where the defendant resides. For purposes of venue, a corporation resides in "any district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c) (2006). Federal Circuit law, which applies in patent infringement cases, holds that the definition of "resides" found in § 1391(c) applies to venue in patent cases under § 1400(b). *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583-84 (Fed.Cir.1990). Under § 1391(c), if a defendant corporation is subject to personal jurisdiction in a state that has more than one judicial district, the corporation will reside in any district, in that state, in which it has contacts sufficient to support a finding of personal jurisdiction. 28 U.S.C. § 1391(c) (2006). In determining whether there are sufficient contacts to support a finding of personal jurisdiction under this provision, each internal district within a multi-district state is to be treated as a separate state. *See id.*; *VE Holding Corp.*, 917 F.2d at 1581 n. 18 (citing H.R.Rep. No. 100-889 (1988), as reprinted in 1988 U.S.C.C.A.N. 5982, 6031). Therefore, to determine whether venue is proper, the Court must determine whether Synthon Pharms would be subject to personal jurisdiction in the MDNC if the district were treated as a separate state.

Likewise, see *Meteoro Amusement Corp. v. Six Flags*, 267 F. Supp. 2d 263, 267 (N.D.N.Y. 2003):

> As an initial matter, it is important to note that §§ 1391(c) and 1400(b) should be read coextensively instead of the latter being the exclusive authority for determination of venue in patent infringement cases. See *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed.Cir.1990), *cert. denied*, 499 U.S. 922 . . . (1991); *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 869 F.Supp. 152, 155 (S.D.N.Y.1994). *Cf. Aerotel v. Sprint*, 100 F.Supp.2d 189, 194 (S.D.N.Y.2000). Thus, the question the court should answer when addressing a 12(b)(3) motion to dismiss in a patent infringement case with respect to a defendant who is a corporation is "whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced." *VE Holding*, 917 F.2d at 1584, (citing 28 U.S.C. §§ 1391(c) and 1400(b)). In accordance with § 1391(c), therefore, the Northern District of New York ("Northern District") will be deemed a proper venue if it is determined that SFI is subject to personal jurisdiction there as

-21-

if it were a separate state. In other words, venue in the Northern District is proper if SFI's contacts with the District render it amenable to suit there. *See* 28 U.S.C. § 1391(c).

The above courts' analysis follows the Federal Circuit's directive in *VE Holding* to read §§ 1400(b) and 1391(c) coextensively, and it adheres closely to the language of the statutes.[9] Accordingly, the Court finds that venue in patent cases must be analyzed on a district-specific basis as set forth in § 1391(c).

## 2. Analysis of Personal Jurisdiction in the Northern District of Ohio

The Court's analysis of whether the Northern District of Ohio is a proper venue thus excludes all of Alien's Ohio contacts situated in the Southern District of Ohio. Specifically, Alien's RFID Solutions Center is located in the Southern District, as is the main campus of each of the Ohio universities with whom Alien has development agreements.

This leaves Alien's registration to do business in Ohio, Austin Short's Ohio-based contact with Alien during the parties' partnership from 2002-2006, the presence of local branches of OSU, an important distributor (Bluestar[10]), and Alien's "most valued" RFID customer (the Kennedy Group) as the only contacts specific to the Northern District. In addition, Avery argues that "[i]n the Northern District of Ohio alone, Alien sells ***millions*** of RFID inlays made by the infringing machine to converters." (Doc. 14 at 2 (emphasis in original).) This includes, but is not limited to, the

---

[9] The Court acknowledges that cases exist suggesting that Avery's interpretation of *Trintec* is valid. *See e.g.*, *Micron Tech.*, 508 F. Supp. 2d at 125 (quoting *Trintec* – "[v]enue in a patent action exists wherever there is personal jurisdiction" -- for the notion that the court may conflate the personal jurisdiction and venue analysis). Like *Trintec*, however, these case consistently arise in states containing a single district court. *Id.* (arising in the United States District Court for the District of Massachusetts).

[10] Bluestar, Alien's "most valued" distributor "maintains its North region office in Strongsville, Ohio" – *i.e.*, within this district. (Doc. 14 at 6.)

Kennedy Group, one of Alien's largest customers worldwide, located in Willoughby, Ohio. Further, as noted above, Avery argues that the fact that Alien is registered to do business in Ohio conclusively establishes venue. The Court must decide whether these contacts are sufficient to establish personal jurisdiction, and thus venue, in this district.

Although registration to do business is not dispositive, it is a factor for the Court to consider. It is particularly weak in the venue analysis, however, because it is not district-specific. Likewise, the presence of local branches of OSU within the Northern District of Ohio is not a strong factor for Avery, especially given that there is no indication that Alien is involved in research or other work at either of these branches. Austin Short's Ohio-based contact with Alien is not "continuous" since the partnership between Avery and Alien ended in 2006. As discussed above in the Court's analysis of personal jurisdiction state-wide, however, the Federal Circuit has noted that significant sales activity and the presence of distributors may be sufficient to establish personal jurisdiction in analyzing personal jurisdiction under Ohio law. *See LSI*, 232 F.3d at 1375; *Delta Sys.*, 4 Fed. Appx. at 860. Thus, the key question is whether, combined with its other minor contacts here, Alien's distribution and sales activity in the Northern District of Ohio is substantial enough to support personal jurisdiction in this district under the circumstances of this case.

Neither party has submitted data indicating what percentage of Alien's national and international sales occur in the Northern District of Ohio. Avery has submitted, however, an Alien press release naming the Kennedy Group its "Most Valued Converter" and Bluestar as its "Most Valued Distributor," and describing Alien's relationships with the Kennedy Group and Bluestar. (Doc. 14-3.) From this press release, it is clear that Alien regards the Kennedy Group and Bluestar as critical to its RFID business worldwide. For example, the November 2006 press release explains

-23-

that Alien recently announced the winners of its RFID "Most Valued Partner Awards," which "recognize four U.S. partners and one European partner out of more than 200 partners worldwide." (*Id*.)  George Everhart, Alien's chief executive officer, stated in the press release that "[a] large majority of our business goes through the channel, so our partners are incredibly important to us." (*Id*.)  Clearly, Alien would not single-out the Kennedy Group and Bluestar from a field of 200 companies unless they were integral to Alien's success in the RFID industry.  Further, Avery generally notes that the Kennedy Group is not Alien's only RFID customer in the Northern District of Ohio.

Whether the Northern District of Ohio is a proper venue for this case is a close question. With this in mind, the Court reiterates that Avery's burden at this stage is simply to make a *prima facie* showing of personal jurisdiction, and that the pleadings and affidavits must be construed in the light most favorable to Avery in this case.  *See Trintec*, 395 F.3d at 1282; *Deprenyl Animal Health, Inc.*, 297 F.3d at 1347.  Given the Federal Circuit's analysis of personal jurisdiction in *LSI*, 232 F.3d at 1375, in which general jurisdiction was based primarily on substantial sales and distribution in the forum, and the Federal Circuit's discussion in *Delta Sys.*, 4 Fed. Appx. at 860, suggesting that substantial sales resulting in millions of dollars in revenue "alone might be sufficient to satisfy the requirements for the exercise of general jurisdiction," the Court finds that Avery has made out a *prima facie* case for personal jurisdiction in the Northern District of Ohio.  The Court finds that Alien's sales in the Northern District of Ohio, through the Kennedy Group and otherwise, represent a substantial portion of Alien's RFID business.  The Court's finding is also based, albeit to a much lesser extent, on the presence of an office of key Alien distributor Bluestar in this district, Alien's registration to do business in Ohio, and the presence of local branches of OSU within the Northern

-24-

District of Ohio.

For the foregoing reasons, Alien's motion to dismiss for improper venue is **DENIED**.

## C.   TRANSFER OF VENUE

In the alternative, Alien requests a transfer to the United States District Court for the District of North Dakota.  Alien argues that North Dakota is a more convenient forum than the Northern District of Ohio.

Transfer of venue is governed by 28 U.S.C. § 1404.  Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought.

28 U.S.C. § 1404(a).  Section 1404(a) requires that the action could have been brought in the district court to which the case is transferred.  In the Sixth Circuit,[11] transfer to such a district is appropriate based on the balancing of a number of factors, including case-specific factors such as the convenience of the parties and witnesses, the relative ease of access to proof, and the availability of compulsory process, and public-interest factors such as the relative burdens of the courts and local interest in the dispute.  *See Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002); *H.K. Enters., Inc. v. Royal Int'l Ins. Holdings, Ltd.*, 766 F.Supp.581, 583 (N.D. Ohio 1991).  No one factor is dispositive; transfer is appropriate if the balance of these factors "strongly" favors trying the case in the transferee district.  *See Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F.Supp.2d 570, 573 (N.D. Ohio 1998); *Midwest Materials, Inc. v. Tougher Indus., Inc.*, 484 F. Supp. 2d 726, 734 (N.D. Ohio 2007); *see also West Am. Ins. Co. v. Potts*, No. 89-6091, 1990 U.S. App. Lexis 12513,

---

[11]  Transfer of venue under 28 U.S.C. § 1404(a) is governed by Sixth Circuit law, not Federal Circuit law.  *See Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000).

at *6 (6th Cir. Jun. 25, 1990) (citing *Nicol v. Koscinski*, 188 F. 2d 537 (6th Cir. 1951)).

Avery does not dispute that this action could have been brought in North Dakota.  Instead, it argues that the balance of the factors does not favor transfer to North Dakota.  The Court agrees with Avery – North Dakota is *not* a more convenient forum in which to litigate this case.

With respect to the convenience of potential witnesses, this is a case in which the potential witnesses are spread across the country and the world.  The inventors are in California, South Carolina, Great Britain and, possibly, Pennsylvania.  Both parties' corporate representatives are in California.  Avery's RFID marketing and development personnel, and most of its legal team, are located in the Northern District of Ohio.  While the machine that employs the allegedly infringing method, and the Alien employees who work with it, are in North Dakota, Alien has made clear that its primary defense in this case is inventorship, not non-infringement, such that the testimony of its North Dakota personnel is potentially unnecessary.  As Avery points out, moreover, there are potential third-party witnesses from the Kennedy Group and Bluestar who are located in Northeast Ohio.

The Court finds that, overall, the potential witnesses are diverse, and certainly not concentrated in North Dakota.[12]  Under these circumstances, it is also worth noting that Cleveland, Ohio is almost certainly a more convenient travel destination for potential witnesses than Fargo, North Dakota.[13]

The location of sources of proof is also a factor.  Alien argues that the machine itself is

---

[12]  Likewise, the availability of compulsory process does not favor transfer to North Dakota because the potential witnesses are not concentrated in any single location.

[13]  The parties did not suggest transfer to any other district – such as one in California. Thus, the Court's convenience analysis is only as between this district and the District of North Dakota.

located in North Dakota, and the records related to its installation and operation are in North Dakota and California.  The records related to the purchase of the machine are located in California.[14]  Avery points out that the machine is an enormous fixture in a factory and is certainly not going to appear in *any* court.  Avery also asserts that its records concerning the technology related to the patents in suit are located in its Northeast Ohio facilities.  Again, it appears that the likely sources of proof are not concentrated in any particular location, and certainly not in North Dakota.  Accordingly, this factor does not favor transfer to North Dakota.

Again, it is important to consider what facts are truly relevant when assessing the location of the witnesses and sources of proof.  The patents at issue are method patents, and Alien's key defense is inventorship, not non-infringement.  The central issue in this case is therefore inventorship of, and, thus, the right to use, the method.  (*See*, *e.g.*, Doc. 30 (discussing Alien's inventorship defense in the context of the motion to disqualify Roger Stewart as an expert).)  With this in mind, the witnesses and documents concentrated in North Dakota who could shed light on how the method is *used* are tangential at best.  The inventors and documents relating to the invention and the patent application process are the key witnesses and evidence.  These witnesses and documents are *not* located in North Dakota.

The public interest factors also do not favor transfer to North Dakota.  Although Alien argues that the North Dakota district court is familiar with RFID technology, Alien is not suggesting that the cases are related, or that the North Dakota court is familiar with the *method* patents that are

---

[14]  In its brief in support of its motion, Alien stated that documents related to the "sale" of the machine are located "in North Dakota and California."  (Doc. 12 at 13.)  Although Alien cites to the declaration of Robert Mallett on this point, Mr. Mallett's declaration does not indicate that records related to the purchase of the machine are located in North Dakota.  (*See* Doc. 12, Ex. C.) At oral argument, Alien conceded that the documents related to the purchase of the machine actually are stored at Alien's corporate headquarters in California.  (Tr. at 16.)

central to this lawsuit.  With respect to expertise, the parties concede that both Courts are capable

of handling the case.  Similarly, nothing suggests that North Dakota has a more important interest

in this litigation than Ohio, especially given that both companies' principal places of business are

in California, and Avery has a major office in Ohio.

Lastly, the plaintiff's choice of forum is a factor in the transfer analysis.  *Picker Int'l, Inc.*,

35 F.Supp. 2d at 573.  Avery's choice of forum – the Northern District of Ohio – is based on its

significant presence here, including its legal team, its RFID facilities and personnel, and substantial

document repository located in Northeast Ohio.  Under these circumstances, Avery's choice of forum

should not be disturbed given that the balance of the other factors does not favor transfer to North

Dakota.[15]

Accordingly, Alien's motion to transfer venue is **DENIED**.

**III.**    **CONCLUSION**

For the foregoing reasons, Defendant Alien Technology Corporation's ("Alien") *Motion to*

*Dismiss or to Transfer Venue* (Doc. 12) is **DENIED**.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: December 4, 2008**

---

[15]  Avery filed a supplemental response in opposition to Alien's motion noting that Alien
had filed a declaratory judgment action in the District of North Dakota on the same patents at
issue in this case.  (Doc. 27.)  In its supplemental reply, Alien explains that its filing was simply
to "preserve venue in the district court it believes is appropriate in the event this Court grants the
relief Alien seeks and, in doing so, dismisses this case rather than transfers it to that district. . . .
[T]he filing is irrelevant to whether this Court should grant Alien's motion."  (Doc. 28.)  Alien's
explanation is sensible; the Court agrees that the filing has no bearing on the resolution of this
motion.