**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AVERY DENNISON CORPORATION,** | : | **Case No. 08 CV 795** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **ALIEN TECHNOLOGY CORPORATION,** | : | <u>**MEMORANDUM & ORDER**</u> |
| **Defendant.** | : | |

## I.  <u>INTRODUCTION</u>

This matter arises on Plaintiff Avery Dennison Corporation's ("Avery") motion for preliminary injunction, filed on July 21, 2008 (Doc. 16).  Avery seeks to enjoin the Defendant, Alien Technology Corporation ("Alien") with respect to two of the seven patents in suit, the '596 and '032 patents.[1]  The asserted purpose for the preliminary injunction is to prevent Alien from using a certain machine and method to produce radio frequency identification ("RFID") inlays during the pendency of this lawsuit.  Alien opposes the motion, which is now ripe for adjudication following discovery, an extensive evidentiary hearing, the submission of post-hearing briefs, and closing argument.[2]

---

[1]  The seven patents in suit are as follows:  **U.S. Pat. No. 6,951,596**; U.S. Pat. No. 7,292,148; U.S. Pat. No. 7,361,251; **U.S. Pat. No. 7,368,032**; U.S. Pat. No. 7,307,527; U.S. Pat. No. 7,359,823; U.S. Pat. No. 7,298,266.  The first four patents relate to processes for making radio frequency identification devices ("RFID").   The other three patents relate to methods of reading, testing, and communicating RFID.  The '596 and '032 patents are the subject of Avery's motion for preliminary injunction.

[2]  The preliminary injunction hearing took place from December 15-18, 2008.  Avery has now filed three briefs in connection with its motion for preliminary injunction: the motion itself (Doc. 16), the pre-hearing brief and motion for summary judgment (Doc. 54), and the post-hearing brief (Doc. 91).  Alien has filed two briefs: the pre-hearing brief (Doc. 53) and post-

II.    **BACKGROUND**

This patent case involves radio frequency identification or "RFID."  As described by Avery, RFID "is an advanced communication technology that uses radio waves to read information stored on microchips for identification purposes."  (Doc. 16.)  RFID systems are similar to bar coding systems in that they facilitate the identification and tracking of a particular object.  There are two components to RFID systems: the RFID reader and the RFID inlay.  The reader retrieves information remotely from the inlay. The inlay is a tag attached to, or incorporated in, the object to be tracked, and it generally consists of a microchip connected to an antenna.  One of the engineering challenges in manufacturing the inlay is finding a way to attach the microchip to the antenna in a quick, effective, and inexpensive manner.  This lawsuit focuses on the "Strap Attach Method," a method for connecting the microchip to the antenna.  Avery obtained a patent on the Strap Attach Method – the '596 Patent.

Avery and Alien are both participants in the emerging market for the development and sales of RFID.  The parties' had a contractual relationship in 2002 to jointly develop an inexpensive method to use Alien's Fluidic Self Assembly ("FSA") process in connection with the Strap Attach Method for producing RFID inlays.  The parties refer to this agreement as the "Joint Development Agreement" or "JDA."  According to Avery, the partnership did not produce the desired results and was terminated in 2006.

Avery alleges that, while Alien did not manufacture or market RFID prior to the JDA, it entered the RFID industry as a result of that relationship.  Avery's lawsuit alleges that Alien used,

---

hearing brief (Doc. 90).  In addition, Alien filed a motion to supplement the record (Doc. 105) to which Avery responded but does not oppose.  Alien's motion to supplement the record is **GRANTED** as unopposed for the reasons discussed below.

and continues to use, Avery's patented methods – *i.e.*, methods reflected in the '596 and '032 patents – to become an RFID producer and, thus, a direct competitor of Avery's in that specific area of the RFID industry.  Specifically, Avery alleges that Alien contracted with a Japanese company, Toray International ("Toray"), for the production and purchase of the "HiSAM" machine specifically designed, pursuant to Alien's specifications, to produce RFID inlays in a high-speed, continuous, "roll-to-roll" process.  It is undisputed that the HiSAM machine is presently operating in Alien's North Dakota facility and is producing RFID inlays.

Alien contends that its employees invented the method of using a strap to manufacture low-cost RFID, disclosed the invention to Avery in the context of the JDA, and that Avery co-opted the invention by obtaining patents on the method without listing Alien employees as inventors.  Thus, Alien alleges that it is a co-inventor of the '596 patent and the associated '032 patent.[3]  As a result, Alien argues, these patents are either invalid for failure to include co-inventors or cannot be enforced against Alien as a co-inventor.  In the alternative, Alien argues that the '596 and '032 patents are unenforceable due to inequitable conduct – *i.e.*, Avery's alleged failure to disclose Alien's alleged assertion of inventorship rights during the prosecution of the '596 patent.  Further, Alien argues that both patents are invalid on various grounds, including anticipation and obviousness, and that the '032 patent is invalid for non-statutory double patenting.  In particular, at the preliminary injunction hearing and in its post-hearing briefs, Alien argued that the '596 patent is invalid as obvious in light of, or anticipated by, U.S. Patent No. 6,779,733 ("Akita" or "'733"), issued to a Japanese company

---

[3]  The '032 patent is directly related to the '596 patent.  After the patent examiner initially rejected the '032 patent, Avery filed a terminal disclaimer on January 25, 2007.  (Ex. 24, 7-13-2007 Terminal Disclaimer.)  The PTO reviewed and accepted the terminal disclaimer.  The terminal disclaimer establishes that the '032 patent will expire at the same time as the '596 patent, and makes the '032 patent enforceable only so long as it is commonly owned with the '596 patent.

known as Akita prior to issuance of the '596 patent.  (Ex. 1024.)  Finally, Alien argues that, even if

the patents are valid and enforceable, its "HiSAM" machine does not employ an infringing method.

As a result of these defenses, Alien asserts that Avery cannot satisfy the first factor in the

Rule 65 analysis applicable to a request for a preliminary injunction, likelihood of success on the

merits.  *See* Fed. R. Civ. P. 65.  In fact, Alien contests each of the four factors in the preliminary

injunction test.

Avery argues that it has a strong likelihood of proving that Alien infringes both the '596 and

'032 patents.  Claim 1 of each patent is at issue.

### Claim 1 of the '596 Patent

*A method of forming an RFID article, the method comprising the steps of:*
*providing an RFID webstock of polymeric material having a plurality of recesses,*
*each of the recesses containing an RFID chip;*
*providing a second web having antennas as spaced thereon;*
*dividing the RFID webstock into a plurality of sections, each of the sections*
*including one or more of the RFID chips and a portion of the polymeric material;*
*indexing the pitch of the RFID sections from high density on said RFID webstock, to*
*a relatively low density on an RFID inlay stock;*
*and attaching the sections to the antennas in an automatic continuous process, so*
*that each of the RFID chips is adjacent to one of the antennas to form the RFID inlay*
*stock.*

### Claim 1 of the '032 Patent

*A method of forming RFID articles, the method comprising:*
*separating at least one section from an RFID webstock having a plurality of sections,*
*wherein the sections each include one or more electrical connectors coupled to*
*respective RFID chips;*
*transporting the at least one section on a transport member; and*
*following the transporting, attaching the sections to an antenna web such that a chip*
*of the at least one section is electrically connected to a respective one or more*
*antennas on the antenna web;*
*wherein the attaching occurs while the antenna web is moving.*

-4-

## III.   **DISCUSSION – THE PRELIMINARY INJUNCTION FACTORS**

The Court must consider the following four factors in determining whether to exercise its discretionary authority to enter a preliminary injunction order:

(1)    whether Plaintiff has a reasonable likelihood of success on the merits;
(2)    whether Plaintiff likely will suffer irreparable harm if the alleged conduct continues;
(3)    the balance of hardships on the parties; and
(4)    the impact of the injunction on the public interest.

*Erico Int'l Corp. v. Doc's Marketing, Inc.*, No. 1:05cv2924, 2006 WL 1174259, at *3 (N.D. Ohio May 3, 2006) (O'Malley, J.) (citing *Oakley Inc. v. Sunglass Hut, Int'l,* 316 F.3d 1331, 1338-39 (Fed. Cir. 2003) *vacated on other grounds by* 516 F.3d 1350 (Fed. Cir. 2008).  In the present case, the Court finds that Avery has not satisfied the first factor, likelihood of success on the merits. Accordingly, Avery's motion for preliminary injunction is **DENIED**.

### A.    **Likelihood of Success on the Merits**

Appropriately, the parties primarily focus on the first factor.  Likelihood of success on the merits encompasses Alien's invalidity, enforceability, and infringement defenses.  Ultimately, "to show a likelihood of success on the merits, [Avery] must show a likelihood that [Alien] infringes a valid claim of the ['596 or '032] patent." *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1354 (Fed. Cir. 2008) (citing *Amazon.com, Inc. v. Barnseandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).

### 1.    **Invalidity**

Alien asserts that there is a substantial question with respect to the validity of the '596 and '032 patents, and, therefore, Avery can not show a likelihood of success on the merits.  Alien raises several validity challenges, including co-inventorship, anticipation, and obviousness.

-5-

i.      **The Standard for Invalidity at the Preliminary Injunction Stage**

In addition to factual disputes, Alien's invalidity arguments raise hotly contested legal arguments regarding Alien's burden at the preliminary injunction stage. Namely, Alien argues that a preliminary injunction is not appropriate if there is a "substantial question" regarding the validity of the patents at issue. Avery, in contrast, argues that the proper standard is whether Avery is likely to succeed on the merits, considering the burdens and standards of proof that would be applicable at trial. Predictably, each party cites the recent Federal Circuit opinion most favorable to its position: Avery cites *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. Oct. 21, 2008); Alien cites *Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350 (Fed. Cir. Feb. 19, 2008).

The Court has significant experience with this issue, having analyzed it extensively in *Erico* in the opinion denying the defendant's motion for reconsideration of the Order granting a preliminary injunction. The Federal Circuit reviewed and vacated this Court's preliminary injunction Order. *See Erico Int'l Corp. v. Doc's Marketing, Inc.*, No. 1:05cv2924, 2007 WL 108450 (N.D. Ohio Jan. 9, 2007) (O'Malley, J.). Obviously, the Federal Circuit disagreed with this Court's view of the standard, and, with this in mind, it would seem that the Federal Circuit's decision in *Erico* now provides the applicable standard – *i.e.*, a substantial question with respect to the validity of the patent is sufficient to support denial of a motion for preliminary injunction. *Erico*, 516 F.3d at 1354 ("[Alien] must show a substantial question of invalidity to avoid a showing of likelihood of success.")

Since its decision in *Erico* in February of 2008, however, the Federal Circuit has issued another opinion addressing the issue, *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341 which warrants further discussion. Because Judge Newman's opinion for the Court in *Sandoz, Inc.* appears

-6-

to reject the "substantial question" standard, this Court is compelled to address whether *Erico* is still the applicable authority on this issue.

### a.     *Erico Int'l Corp. v. Vutec Corp.*

*Erico* is the earlier of the two cases, both of which were issued in 2008.  The judges on the panel in *Erico* were Judges Randall R. Rader, Timothy B. Dyk, and Pauline Newman. Writing for the majority, Judge Rader described the defendant's burden when challenging validity at the preliminary injunction stage as follows:

> 'Validity challenges during preliminary injunction proceedings can be successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial.'  *Amazon.com, Inc.*, 239 F.3d at 1358.  In other words, a defendant need not prove actual invalidity.  On the contrary, a defendant must put forth a substantial question of invalidity to show that the claims at issue are vulnerable.  Thus, a showing of a substantial question of invalidity requires less proof than the clear and convincing standard to show actual invalidity. *Id*.

516 F.3d at 1355-56.  The majority concluded that the mere fact that the defendant had "cast doubt on the validity of the . . . patent" was enough to negate a finding of likelihood of success on the merits and to deny the motion for preliminary injunction accordingly.  *Id*. at 1356.  Judge Newman dissented, arguing that the United States Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), made clear that the substantial question standard employed by the Federal Circuit is the wrong one:

> My colleagues have applied an incorrect criterion.  The correct criterion is not whether there is a 'substantial question'; it is whether the defendants have shown that they are likely to succeed on the merits, on the standards and burdens of proof as would prevail at trial.

*Id*. at 1359.  In fact, as Judge Newman noted, the Supreme Court in *eBay* specifically indicated that traditional principles of equity "apply with equal force to disputes arising under the Patent Act."

-7-

*eBay*, 547 U.S. at 391-92.

### b.     *Abbott Laboratories v. Sandoz, Inc.*

*Sandoz, Inc.* was issued about eight months after *Erico*. *Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. Oct. 21, 2008). It includes a lengthy debate between Judge Newman (writing for the Court) and Judge Arthur J. Gajarsa (dissenting) regarding the defendant's burden with respect to invalidity in the context of a preliminary injunction.[4] In *Sandoz, Inc.*, the majority opinion (Newman) defined the relevant burden as follows:

> In determining, for preliminary injunction purposes, the likelihood that patent invalidity would be established at trial, the district court evaluates the factual and legal arguments in light of the presumptions and burdens that will inhere at trial, *viz.*, that "[a] patent shall be presumed valid . . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity. 35 U.S.C. § 282.

544 F.3d at 1346. Judge Newman's primary argument was that <u>every</u> circuit – and she painstakingly summarized the law in each – applies the above standard in the preliminary injunction context and, she contended, patent law should be no different. *Id*. at 1364-1368.

Judge Gajarsa's dissent cites *Erico* and a host of other Federal Circuit opinions in support of the "substantial question" formulation of the defendant's burden. *Id*. at 1373. For example, Judge Gajarsa cites *E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C.*, 525 F.3d 1353, 1358 (Fed. Cir. May 14, 2008) ("if the accused infringer raises 'a substantial question regarding validity,' the district court should find that the patentee has not shown a likelihood of success on the merits" (internal citations omitted)). In *MacDermid Printing*, which issued between

---

[4] Interestingly, Judge Glenn L. Archer, Jr. concurred in the judgment affirming the district court's imposition of a preliminary injunction, but did not join in the sections discussing validity or the defendant's burden on that issue. Judge Archer did not join the dissenting opinion regarding these sections either, however.

*Erico* and *Sandoz, Inc.*, Chief Judge Paul R. Michel, Judge Sharon Prost, and Judge Donald C. Pogue (sitting by designation) applied the "substantial question" standard without comment, but held that the district court had erred in finding a substantial question with respect to validity.  *Id.*

### c.    Conclusion: "Substantial Question" Is the Standard

Based on these recent cases, it appears that Judge Newman is in the minority, perhaps a minority of one.  Judges Rader, Gajarsa, and Michel have all written opinions applying the "substantial question" standard, and Judges Dyk, Prost, and Archer appear tacitly to approve of that standard.  Respectfully, the Court continues to agree with Judge Newman on this issue and finds her opinion in *Sandoz, Inc.* particularly persuasive.  *Sandoz, Inc.*, 544 F.3d 1341 (Newman, J.); *see also Erico Int'l Corp. v. Doc's Marketing, Inc.*, No. 05cv2924, 2007 WL 108450, at *7-10 (N.D. Ohio Jan. 9, 2007) (O'Malley, J.) (articulating this Court's reasoning in opposition to the substantial question standard).  Nonetheless, the Court finds that it is constrained to apply the standard set forth in *Erico* and, accordingly, finds that Alien's burden is to show no more than the existence of a "substantial question" regarding the validity of the '596 and '032 patents.  If Alien succeeds in "casting doubt" regarding the validity of the patents the Court must deny Avery's motion for preliminary injunction.  *See Erico*, 516 F.3d at 1356.

### ii.    Analysis of Invalidity

Alien's primary defense throughout the proceedings was co-inventorship – *i.e.*, that its employees should have been named as co-inventors on the patent application for the '596 patent.[5]

---

[5]  Co-inventors must apply for a patent jointly.  35 U.S.C. 116.  "A patent is invalid if more or less than the true inventors are named."  *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002); *see also Checkpoint Sys., Inc. v. All-Tag Security, S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 1998) (citing 35 U.S.C. § 102(f) for the rule that a patent must list the correct inventors of the patent).

Alien also argued that the '596 and '032 patents are anticipated and/or obvious in light of prior art. In particular, Alien argued that U.S. Patent No. 6,779,733 ("Akita" or "'733") anticipates or makes obvious each and every element of the '596 and '032 patents.

### 1.    Reexamination

Alien raised its anticipation argument in its initial brief, but did not focus on it during the preliminary injunction hearing or in the briefing.[6]  Meanwhile, a request for *inter partes* re-examination of the patents at issue here was pending before the United States Patent Office ("PTO").[7]  On February 13, 2009, the PTO <u>granted</u> a request to re-examine the '596 patent <u>and</u>, upon re-examination, <u>rejected</u> Claim 1 of the '596 patent as anticipated by Akita.  (Doc. 105, Exhibits.)  Alien then filed its motion to supplement the record (Doc. 105) informing the Court of the PTO's actions in connection with Toray's request for reexamination.  As a result, Alien's anticipation argument regarding the Akita patent is now front and center.

### 2.    Anticipation & Akita

Anticipation is encompassed by 35 U.S.C. § 102.  The Federal Circuit recently described the anticipation defense as follows:

> Claimed subject matter is "anticipated" when it is not new; that is, when it was previously known. Invalidation on this ground requires that every element and limitation of the claim was previously described in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in possession of the invention. *See Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed.Cir.2003); *Continental Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1267-69 (Fed.Cir.1991).

---

[6]  Indeed, the evidence and argument presented by Alien on this issue at the hearing was particularly weak.  (*See* Note 16, *infra*.)

[7]  The request for *inter partes* re-examination of the '596 patent was filed by Toray International, Inc. on December 3, 2008.  (Doc. 105-2.)

-10-

*Sanofi-Synthelobo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008).

Alien's invalidity argument is now centered on the contention that Akita (*see* Ex. 1024) anticipates[8] each and every element of Claim 1 of the '596 and '032 patents.[9]  The PTO addressed this very question in rejecting Claim 1 of the '596 patent in its initial Office Action on Toray's request for *inter partes* reexamination.  In granting the request, the PTO also rejected Claim 1 of the '596 patent, stating:

---

[8] Alien, and Toray in its request for *inter partes* re-examination, also raised "obviousness."  Obviousness is a defense codified at 35 U.S.C. § 103(a).  For the reasons discussed below, the Court need not address Alien's obviousness arguments.

[9] The Akita patent describes a method for making an RFID non-contact ID card, or "smart card."  Akita thus involves RFID technology.  The key figure from the patent for purposes of this case is Figure 14 (*see* Ex. 1024):



**6.     Claims 1-3 . . . are rejected under 35 U.S.C. 102(a or b) as being anticipated by Akita . . . .**

This rejection of claims 1-3 . . . was proposed by third party requester and **is adopted** for the reasons stated in the request at page 25, lines 3 through the end of the claim chart on page 62, which are hereby incorporated by reference.

(Doc. 105-4 at 6.)   The request for *inter partes* reexamination essentially advances the same anticipation arguments Alien presented in connection with this motion for preliminary injunction.[10] Therefore, the PTO essentially adopted Alien's invalidity arguments in rejecting the '596 patent as anticipated by Akita upon reexamination.

### 3.     Akita Raises A Substantial Question

Again, the standard at the preliminary injunction stage is whether the defendant has raised a substantial question of invalidity.   In this case, the finding of anticipation by the PTO upon re-examination of Claim 1 of the '596 patent raises a substantial question regarding validity.   In fact, the PTO action granting the request for reexamination expressly states that "substantial new questions of patentability" have been raised.   (Doc. 105-3 at 5.)   Given the substantial question standard, the PTO's initial office action is at least facially relevant.

### a.     The Court Must Consider the PTO's Initial Actions

Avery argues, however, that the Court should not deny the motion for preliminary injunction based on the PTO actions related to Toray's request for *inter partes* reexamination.   Specifically, Avery argues that the PTO action is irrelevant because the PTO grants requests for reexamination

_____

[10]   For example, both Alien and Toray argue that Akita teaches that "raw material [the antenna web – 37 in Fig. 14 –] is transferred continuously with a predetermined rate."  Dr. Gotcher, Avery's expert, testified that this means the web is never cut or separated.  Alien argues that "continuously with a predetermined rate" means that the antenna web does not stop moving. This argument is discussed in detail below.

as a matter of course, *i.e.*, "substantially more than 90 % of the time."  (Doc. 109 at 1.)  Avery

contends that the PTO "routinely *adopts* the reexamination requester's view of a prior art reference

in its first action," and did so here with respect to the Akita reference.  (*Id*. (emphasis in original).)

Avery also notes that the PTO did <u>not</u> adopt Toray's view of Alien's '247 patent, the Credelle

reference.  (*Id*. at 2.)  In other words, the PTO adopted Toray's, and, consequently, Alien's,

arguments with respect to anticipation in light of Akita only and rejected the anticipation arguments

regarding the '247 patent.  Avery summarizes its argument as follows:

> The grant of the reexamination request and the office action are merely the first step
> in the process.  . . .  At this stage the reexamination process has little probative
> value–especially as it primarily relies (by incorporation of Toray's arguments) on the
> same misunderstanding of Akita that Dr. Gilleo harbored at the hearing.

(Doc. 109 at 2.)

Avery's arguments fail based on the "substantial question" standard discussed above.  There

is, admittedly, some practical appeal to the argument that the Court should assess the validity of the

patent independent of PTO actions taken as a matter of course.[11]  "Substantial question," however,

is a relatively low standard that, as noted in *Erico*, merely requires Alien to engender "doubt"

regarding the validity of the '596 patent.  *Erico*, 516 F.3d at 1356-57. Under the circumstances of

this case, the PTO's initial action rejecting Claim 1 of the '596 patent as anticipated by Akita is

sufficient to satisfy that standard.

Recently, several district courts have squarely addressed Avery's argument that the PTO

action is irrelevant to the district court's consideration of a preliminary injunction, and each has

---

[11]  Avery is correct in its assertion that the PTO routinely grants requests for
reexamination.  Whether the PTO routinely adopts the requester's invalidity arguments and
rejects the claims at issue in its initial action is unclear, however, and, as discussed below, belied
by the fact that, in this case, the PTO only selectively adopted Toray's invalidity arguments.

rejected it.  *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, Civ. No. 07-633-JFF-LPS, 2008 WL 506974, at *7-8 (D. Del. Nov. 19, 2008)[12] (discussing the issue at length and concluding that "[the Plaintiff's] position is essentially that I evaluate the Motion solely through the lens of this judicial action and ignore the ongoing PTO reexamination.  This I cannot do."); *DUSA Pharm., Inc. v. River's Edge Pharm., LLC*, Civil Action No. 06-1843 (SRC), 2007 WL 748448, at *3 (D. N.J. Mar. 7, 2007) ("[T]he PTO Office Action rejecting all of the claims of the [patent] on grounds of anticipation and/or obviousness raises a substantial question as to the validity of the [patent]."); *Pergo, Inc. v. Faus Group, Inc.*, 401 F. Supp. 2d 515, 523-24 (E.D. N.C. Nov. 7, 2005) (discussing the impact of the grant of a request for reexamination, noting that the relevant standard is important in determining that impact, and concluding that "it is probative to the issue of whether defendants have raised a substantial question of validity"); *cf. Constr. Equip. Co. v. Powerscreen Int'l Distrib., Ltd.*, No. 96-CV-1574-AC, 2009 WL 437703, at *4-5 (distinguishing *DUSA Pharm.*, 2007 WL 748448, on the grounds that PTO action is not as important in the context of a permanent injunction because the standard for relief from a permanent injunction is higher than the substantial question standard for a preliminary injunction).  Avery does not cite a single case in support of its position, moreover, and the Court has not identified authority contrary to the cases cited above.  *See Power Integrations, Inc.*, 2008 WL 5069784 at *8 ("[The Plaintiff] has failed to identify any cases in which a patentee was granted a preliminary injunction at a time at which the patent claim alleged to be infringed had been rejected by the PTO in a reexamination proceeding. . . . I have similarly been unable to locate any such authority.").  In sum, the courts that have considered this issue have held

---

[12]  *Power Integrations, Inc.* is a report and recommendation issued by a Magistrate Judge and adopted by the district judge after neither party filed objections.  2008 WL 5101352 (D. Del. Dec. 3, 2008).

-14-

that the PTO's action on a request for reexamination is directly relevant to the issue of whether the

defendant has raised a substantial question of validity, but is not dispositive in and of itself.  *See*

*DUSA Pharm., Inc.*, 2007 WL 748448, at *3 (citing *Pergo, Inc.*, 401 F. Supp. 2d at 524).[13]

The most compelling aspect of Avery's argument is that allowing the district court to rely

on the PTO's treatment of the request for reexamination encourages the defendant to file a request

for reexamination just to thwart a motion for preliminary injunction.  *Power Integrations, Inc.*

addressed, and rejected, this policy argument directly:

> PI maintains that if courts regularly deny preliminary injunctions based on the pendency of PTO reexamination proceedings, the inevitable result will be that no preliminary injunction will issue in a patent infringement case, given that nearly every reexamination request is granted. . . . Thus, according to PI, if a grant of reexamination is the basis for denying an injunction, all alleged infringers can be expected to file such requests. While I have no desire to encourage a flood of reexamination requests, PI's worries are ultimately unpersuasive, for several reasons. First, it is the PTO's Office Action rejecting claim 1 of the 876 patent, and not merely the grant of the reexamination request, that I find raises a substantial question of validity which has not been rebutted here. Second, the substantial question as to claim 1's validity is not the only reason I am recommending denial of a preliminary injunction. PI has also failed to meet its burden of showing irreparable harm. *See infra*. Further, my treatment of the PTO's preliminary rejection of the claim on which the Motion is based as highly probative of whether a substantial question of invalidity is present is consistent with other cases, including from the Federal Circuit.  Finally,

---

[13]  For example, in *DUSA Pharm., Inc.*, the court addressed a factually analogous situation – *i.e.*, a pending motion for preliminary injunction where the PTO had issued an initial office action "rejecting all of the claims of the [patent at issue] on grounds of anticipation and/or obviousness."  *DUSA Pharm., Inc.*, 2007 WL 748448, at *3.  The court held that the PTO's action "raises a substantial question as to the validity of the [patent]."  *Id*.  In so holding, the court noted as follows:

> The Court recognizes that the Office Action . . . constituted an initial action in connection with the reexamination process and that the PTO's final word on the . . . Patent's validity has not yet issued. DUSA, however, has not shown that the validity question raised by the reexamination order and the Office Action lack substantial merit.  Thus, the Court finds that [the defendant] has met its burden . . . .

*Id*.

-15-

I trust that the good faith and ethical responsibilities of counsel will keep the number of frivolous reexamination requests to a minimum.

*Id*. at *9 (omitting footnotes and citations).  In other words, Avery's policy argument applies when the only basis for denying the motion for preliminary injunction is the PTO's grant of a <u>request</u> for reexamination.  In this case, the PTO has not only granted Toray's request for reexamination, it has also issued its initial action rejecting Claim 1 of the '596 patent on the same grounds asserted by Alien in connection with the motion for preliminary injunction now before the Court.[14]  In addition, the Court does not exclusively rely on the result of the PTO's initial action in finding a substantial question.  As Avery points out, the PTO did not simply rubber stamp all of Toray's arguments in its request for reexamination.  Instead, it adopted Toray's argument with respect to anticipation in view of Akita but was not persuaded by the arguments in view of Credelle (the '247 patent).  This calls

---

[14]  In its motion to supplement the record (Doc. 105) Alien notes that this case is distinguishable from the *Erico* case.  *See Erico Int'l Corp. v. Doc's Marketing, Inc.*, No. 05cv2924, 2007 WL 108450 (N.D. Ohio Jan. 9, 2007) (O'Malley, J.).  In *Erico*, the defendant filed a motion for reconsideration of the Court's Order granting the plaintiff's motion for preliminary injunction on the grounds that the PTO had granted a second request for reexamination subsequent to the Court's Order imposing the preliminary injunction.  *Id*.  The Court held that the mere grant of a <u>second</u> request for reexamination (the first of which was denied) was not sufficient evidence of the PTO's view of invalidity to justify reconsideration of the Court's initial Order.  *Id*. at *11.  As Alien points out, the question in *Erico* was whether the PTO's grant of the reexamination request itself was sufficient to justify denying the motion for a preliminary injunction under the applicable standard.  Here, the question is whether the PTO's initial action <u>rejecting</u> Claim 1 of the '596 patent as anticipated by Akita is relevant to the resolution of Avery's motion for preliminary injunction.  This is a material distinction because, unlike *Erico*, in which the Court specifically noted that the "PTO's order is not a merits determination, nor does it suggest what the outcome of its ultimate merits determination will be[,]" *id.*, the PTO's initial action in this case <u>is</u> a merits decision, even if a preliminary one, expressly rejecting the very claims at issue on the same grounds as Alien asserted in connection with the motion now before the Court.  Thus, this Court's finding in *Erico* is consistent with the reasoning of other district courts who have addressed this issue.  On appeal in *Erico*, the Federal Circuit did not address this question directly, finding without reference to the PTO reexamination that the defendant had "cast doubt" on the validity of the patent at issue.  *Erico*, 516 F.3d at 1357 (Fed. Cir. 2008).

-16-

into question the basic premise of Avery's argument – *i.e.*, that the PTO initial action is little more than a perfunctory adoption of the requester's invalidity arguments.

The PTO's initial action appears to be directly relevant.  In particular, the PTO's targeted initial action regarding the Akita patent demonstrates that the reexamination process can affect the ultimate validity of the patent.  As stated in *Power Integrations, Inc.*, "[r]egardless of the evidentiary standard it applies, the PTO has the authority to cancel or modify [the plaintiff's] patent claims." 2008 WL 5069784 at *8.  Consequently, the Court cannot simply ignore the PTO's grant of the reexamination request which expressly found a "substantial new question of patentability," and the PTO's initial action rejecting Claim 1 of the '596 patent for the very reasons Alien advanced in defending this motion for preliminary injunction.[15]

### b.    Alien's Invalidity Arguments Are Colorable

This is especially true since Alien's arguments regarding invalidity in view of Akita are facially reasonable.[16]  As Alien explained in its post-hearing brief, the language of the Akita patent, specifically column 11, lns. 32-37, contradicts Avery's expert's argument with respect to anticipation and Akita.  (Ex. 1024, Akita, col. 11, lns. 32-37.)  Akita describes a method for using an interposer to affix a chip to an antenna web. Referring to Figure 14, the relevant paragraph of the Akita patent

---

[15]  Whether this is a sufficient basis to deny a motion for preliminary injunction depends heavily on the applicable standard.  While it is difficult to argue that the PTO's finding of a "substantial question of patentability" is irrelevant to whether there is a "substantial question" of invalidity, this issue – whether it is a matter of semantics or something more – would not be as important if the standard was likelihood of success in the usual sense; *i.e.*, as articulated by Judge Newman.

[16]  The Court's conclusion in this regard is not based on the testimony of Alien's expert, Dr. Gilleo.  In fact, Dr. Gilleo's testimony was internally inconsistent, he admitted that he did not really understand the Akita patent and Avery's counsel ultimately had to explain it to him, and he testified that he used different claim constructions for his validity and infringement analyses. Therefore, the Court did not find his testimony credible and does not rely on it in this Order.

for the purpose at hand states:

> It should be appreciated that the transfer of the raw material 30 [*i.e.*, the material on the interposer] is suspended during the stamping and transfer of the interposer board 7, and resumed upon completion thereof.  Thus, the raw material 30 is transferred intermittently.  On the other hand, the raw material 37 [*i.e.*, the antenna web] is transferred continuously with a predetermined rate.



Avery's expert, Dr. Gotcher, proffered only one argument opposing anticipation in light of Akita.  Dr. Gotcher's testimony focused on one aspect of Akita – whether the antenna web – Fig. 14, 37 – is moving when the interposer is affixed to it.  (Tr. 663.)  In other words, the debate centered on whether attachment in Akita occurs without stopping the antenna web – *i.e.*, in a continuous process as occurs in the '596. (Gotcher, Tr. 663:19-664:5.)  Dr. Gotcher asserts that Akita uses the term "continuous" to indicate that the <u>antenna web is never cut</u> while the '596 and '032 use the term to indicate that the <u>antenna web never stops moving</u>.  Dr. Gotcher's opinion is based on his conclusion that the transponder - 46a in Figure 14 above – has to move in a manner perpendicular to the antenna web.  Consequently, Dr. Gotcher opines that the antenna web must stop or either it

-18-

or the interposer would be damaged.  Dr. Gotcher testified that it is impossible for the attaching step

to occur by way of a perpendicular movement while the antenna web is moving.  This is important,

because the corresponding element of Claim 1 of the '596 patent states that the attaching step occurs

by "attaching the sections to the antennas in an automatic continuous process" and Claim 1 of the

'032 patent states that "the attaching occurs while the antenna web is moving."

In response, Alien argues that Dr. Gotcher's definition of continuously does not make sense

based on the language of the Akita patent quoted above.  As Alien puts it, "Dr. Gotcher is arguing

that the antenna web moves intermittently, but in the same paragraph in which Akita says that the

interposer board moves intermittently, the inventor states that the antenna web moves continuously."

(Doc. 90 at 46.)  Alien supports its argument by noting that "continuously" is an adverb modifying

"transferred" and that the word "intermittent" is used in the same paragraph to describe the

movement of the interposer.  Toray presented the same argument at pages 29-30 of the request for

*inter partes* re-examination.  (Doc. 105-2 at 29.)

The plain language of Akita supports Alien.[17]  The second sentence of the paragraph from

the Akita patent quoted above describes the movement of the interposer as "intermittent."  The third

---

[17]  The parties adopted a strange approach to the issue of claim construction in this
proceeding.  Though the Court pointed out that the Federal Circuit generally counsels that claim
construction occur as the first step in any preliminary injunction analysis, the parties told the
Court at the Case Management Conference that they did not believe any claim terms were in
dispute, or at least not for this aspect of the proceedings.  In the pre-hearing briefing, the parties
landed on one term ("transport member"), on which it appeared there was material disagreement.
At the hearing, Alien claimed it then "realized" that two additional terms – "dividing/separating"
and "indexing" – were the subject of debate.  It was not until the post-hearing briefing that the
parties framed the debate over the Akita patent as largely a claim construction issue – *i.e.*, one
centering on the meaning(s) of "continuous" or "continuous process" in the two patents.  Because
all claim construction issues except the most recent involving the scope of the Akita patent are
relevant only to the parties' debate over infringement – a debate the Court does not currently
resolve – it need not and does not construe the terms "transport member," "dividing/separating,"
and "indexing" in this Order.

sentence specifically distinguishes the movement of the antenna web, beginning with the clause "on the other hand" and describes the movement as "continuous at a predetermined rate." In light of this clear textual distinction, Dr. Gotcher's opinion – that it would be impossible for the antenna web to move constantly throughout the process without damaging the antenna web – is fundamentally inconsistent with the language of the patent.

Dr. Jay Tu testified on behalf of Alien, moreover, that the HiSAM machine uses an ultrasonic bonding station to attach the strap to the antenna using a motion perpendicular to the continuously moving antenna web. (Tu, Tr. 485-86.) Dr. Tu's testimony directly contradicts Dr. Gotcher's opinion that the antenna web must stop because it would be damaged by the vertical movement of the interposer. The ultrasonic bonding station employs a perpendicular motion at the attaching stage of the process without damaging the antenna web.

At the very least, Alien has presented colorable arguments that there is a substantial question with respect to whether the patents at issue are invalid as anticipated by Akita. The PTO's action serves to bolster this showing, which may not have been sufficient in and of itself given the complete absence of reliable expert testimony in support of Alien's position. Therefore, the PTO's action is an important consideration in this case. The Federal Circuit has never held that, as a matter of law, policy, or practice, the PTO's initial actions should be disregarded as *pro forma*. Given the substantial question standard, moreover, the district court's role is to assess all of the evidence related to validity and determine whether the defendant has cast doubt on the validity of the patent. *Erico*, 516 F.3d at 1356-57. In this case, Alien has done so based on (1) the PTO's initial action rejecting Claim 1 of the '596 patent as anticipated by Akita, and (2) the same colorable arguments regarding anticipation in view of Akita advanced in connection with the motion for preliminary

-20-

injunction.   Accordingly, the Court finds a substantial question with respect to validity.

### B.    IT IS NOT NECESSARY TO ANALYZE THE REMAINING PRELIMINARY INJUNCTION FACTORS

Avery has not established likelihood of success on the merits given the doubtful validity of the '596 patent[18] after the PTO's finding of anticipation based on Akita.[19]  The Federal Circuit has consistently held that "case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001); *see also e.g. Nat'l Steel Car, Ltd. v. Canadian Pac. Rwy., Ltd.*, 357 F.3d 1319, 1325 (Fed. Cir. 2004) ("a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits" citing *Amazon.com*).  A district court, moreover, need not analyze all four preliminary injunction factors when it determines that the movant has not established likelihood of success on the merits.  *See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552 (Fed. Cir. 1994).  As the Federal Circuit stated in *Reebok*:

---

[18]   The substantial question with respect to the validity of the '596 patent is commuted to the '032 patent as well.  As noted above, the '032 patent is subject to a "terminal disclaimer." (*See* Ex. 24, 7-13-2007 Terminal Disclaimer.)  Accordingly, although the PTO has yet to address Toray's request for *inter partes* reexamination of the '032 patent, the fact that the '032 patent is dependent upon the '596 patent is sufficient to raise a substantial question.

[19]   Anticipation is just one of Alien's likelihood of success arguments.  As noted above, Alien's chief contention in its briefs and at the hearing was co-inventorship.  Alien also argued, *e.g.*, that Avery was unlikely to succeed on the merits because the '596 patent is not enforceable due to inequitable conduct and because the patents were not infringed.  While, given the extent of its analysis of these issues to date (in connection with the preliminary injunction hearing and otherwise), the Court has fairly firm views on how it would resolve all of these arguments, many would require extensive discussion.  Having found a substantial question on the issue of anticipation, the Court expressly declines to address the other issues raised by Avery's motion and Alien's defenses at this stage of the proceedings.  *See Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994).

> Because, irrespective of relative or public harms, a movant must establish both a likelihood of success on the merits and irreparable harm . . ., the district court may deny a preliminary injunction based on the movant's failure to establish either of these two crucial factors without making additional findings respecting the other factors.

32 F.3d at 1556.[20]  Accordingly, having found that Avery cannot meet its burden with respect to likelihood of success on the merits, the Court will not address the remaining preliminary injunction factors.

---

[20]  In *Reebok*, Chief Judge Michel reasoned that permitting a district court to avoid analyzing the other three factors when the movant fails to establish the first factor acknowledges that "[d]istrict judges are overburdened and need flexibility to operate efficiently. They deserve tolerance by reviewing courts so they can tailor procedures of adjudication to the case at hand." *Id*. at 1557.  Once again, as Judge Newman pointed out in her dissent in *Erico*, the Supreme Court in *eBay* indicated that the traditional equitable principles underlying preliminary injunction jurisprudence apply equally in patent cases.  516 F.3d at 1357 (citing *eBay*, 547 U.S. 388, as an example of the majority opinion's "depart[ure] from the policy guidance of precedent" and noting that *eBay* instructs that "the traditional criteria of equity apply to injunctions in patent cases").  In *Sandoz, Inc.*, Judge Newman clearly explains that these equitable principles require the district court to weigh likelihood of success on the merits <u>and</u> the equitable considerations – irreparable harm, the balance of harms, and the public interest.  *Sandoz, Inc*., 544 F.3d at 1363-71.  Judge Newman's analysis of this issue suggests that Judge Michel's reasoning in *Reebok* may be inconsistent with *eBay*.  *Id*.  The Federal Circuit has not addressed this issue since *eBay*, however, and *Reebok* remains good law.  If the Court were to find it necessary to analyze irreparable harm, moreover, it would likely conclude that Avery has failed to shoulder its burden with respect to that factor as well.  For example, Avery presented only one witness on the issue of irreparable harm, and his testimony was riddled with speculation and hearsay.  Further, the unique aspects of the nascent RFID industry, in particular, the fact that market participants are engaged in a race to a lower price-point at which it is assumed demand for RFID inlays will increase exponentially, suggests that traditional notions of *e.g.*, "price erosion," should not apply in this case.

**IV.**     **CONCLUSION**

For the foregoing reasons, Avery's motion for preliminary injunction (Doc. 16) is **DENIED**.

Further, Alien's motion to supplement the record (Doc. 105) is **GRANTED**.


**IT IS SO ORDERED.**


s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 18, 2009**